# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACOBO JAJATI,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>U.S. CUSTOMS AND BORDER PROTECTION, et al.<br><br>　　　　　　　　　　Defendants. | Case No.: 3:22-cv-00175-RBM-AGS<br><br>**ORDER: (1) GRANTING MOTION TO DISMISS FOR LACK OF JURISDICTION; AND (2) DENYING AS MOOT MOTION FOR PRELIMINARY INJUNCTION**<br><br>**[Docs. 7, 10]** |

Presently before the Court are: (1) a motion to dismiss for lack of jurisdiction filed by Defendants United States Customs and Border Protection ("CBP") and Christopher Magnus in his official capacity as the Commissioner of CBP (collectively "Defendants") (Doc. 7); and (2) a motion for preliminary injunction filed by Plaintiff Jacobo Jajati ("Plaintiff") (Doc. 10). The parties filed opposition and reply briefs in response to each motion. (*See* Docs. 8, 9, 13, 14.) On August 2, 2022, the Court took the matters under submission pursuant to Civil Local Rule 7.1(d)(1).

For the reasons discussed below, Defendants' motion to dismiss for lack of jurisdiction is **GRANTED**. Accordingly, Plaintiff's motion for preliminary injunction is denied as **MOOT**.

## I. BACKGROUND

### A. Plaintiff's Allegations

This case involves Defendants' decision to revoke Plaintiff's membership in Secure Electronic Network for Travelers Rapid Inspection ("SENTRI"), one of the Trusted Traveler Programs administered through the United States Department of Homeland Security ("DHS"). (*See* Doc. 1 ("Compl.").)

Plaintiff is a United States citizen who resides in San Diego, California. (*Id*. ¶ 6.) He alleges he "has a perfect record, personally and with respect to business, and has never been convicted (or ever charged) with any criminal misconduct of any kind." (*Id*.) Plaintiff also alleges he "has no personal or business involvement with any criminals and no association whatsoever with any criminal conduct by others." (*Id*.)

In 2013, Plaintiff separated from his then-wife, Margarita Rozillio Jajati ("Rozillio Jajati"). (*Id*. ¶ 15.) Plaintiff and Rozillio Jajati's divorce finalized on May 21, 2015. (*Id*.) On October 12, 2018, Rozillio Jajati was arrested for crossing the United States-Mexico international border with methamphetamines. (*Id*. ¶ 16.) Plaintiff alleges on information and belief that Rozillio Jajati "bailed out and fled." (*Id*.) The publicly available criminal docket in Rozillio Jajati's case confirms Rozillio Jajati absconded and currently has outstanding a warrant for her arrest. *See United States v. Rozillio Jajati*, Case No. 18-cr-4803-W (S.D. Cal.), Docs. 28 and 29 (showing failure to appear and issuance of a bench warrant on February 4, 2019). Plaintiff alleges neither he nor the two children he shares with Rozillio Jajati are in personal or business contact with Rozillio Jajati. (Compl. ¶ 29.)

The same day Rozillio Jajati was arrested (October 12, 2018), Plaintiff received notice that his SENTRI membership had been revoked. (*Id*. ¶ 17.) On or around February 19, 2019, Plaintiff had an interview with a CBP supervisor regarding revocation of his SENTRI membership. (*Id*. ¶ 18.) On August 2, 2019, Plaintiff's membership in SENTRI

was reinstated. (Doc. 7-1 at 7.)[1] On August 2, 2021, Plaintiff received notice from CBP that his SENTRI membership had again been revoked. (*Id*. ¶ 22.) The letter from CBP indicated the reason for the revocation was that Plaintiff "no longer qualif[ied] for the Trusted Traveler Program." (*Id*.) Plaintiff attributes the second revocation of his SENTRI membership to Operation Sentinel, a "counter-network targeting operation focused on transnational criminal organizations affiliated with the smuggling of migrants" administered by DHS, which was announced by DHS Secretary Alejandro N. Mayorkas on April 27, 2021. (*Id*. ¶¶ 20–21.) Plaintiff alleges he had a second "interview with a supervisor regarding the revocation of his" SENTRI membership on or around September 30, 2021. (*Id*. ¶ 26.) As of the date of this Order, Plaintiff's membership in SENTRI remains revoked. (*See id*. ¶ 27.)

Plaintiff subsequently filed this lawsuit on February 7, 2022, seeking a declaration from the Court that CBP's revocation of Plaintiff's SENTRI membership is arbitrary and capricious and contrary to law in violation of the Administrative Procedure Act ("APA"),

---

[1] In his Complaint, Plaintiff alleges his SENTRI membership was reinstated on or before January 14, 2020. (Compl. ¶ 19.) However, in connection with their motion to dismiss, Defendants request the Court take judicial notice of the dates on which Plaintiff's SENTRI membership was initially revoked (October 12, 2018), reinstated (August 2, 2019), and revoked again (August 2, 2021). (*See* Doc. 7-2 (Request for Judicial Notice); Doc. 7-1, Exs. 1–3 (Letter correspondence to Plaintiff from DHS regarding SENTRI membership).) Federal Rule of Evidence Rule 201 provides that a court may take judicial notice of adjudicative facts that are "not subject to reasonable dispute" because they are either (1) "generally known within the trial court's territorial jurisdiction" or (2) "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(a), (b). The dates associated with Plaintiff's SENTRI membership changes "can be accurately and readily determined from" the DHS letters to Plaintiff. FED. R. EVID. 201(b)(2). Neither party disputes the DHS letters' authenticity, or their accuracy. *Id*. Additionally, the Ninth Circuit has held that even where a document is not attached to the complaint, "it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Accordingly, the Court grants Defendants' request for judicial notice.

5 U.S.C. §§ 551 *et seq*. (*See id*. ¶¶ 1–2.)  Plaintiff also alleges CBP failed to provide him an adequate explanation for revoking his SENTRI membership. (*Id*. ¶¶ 23, 30, 35–36.)

**B. SENTRI**

The relevant statute governing SENTRI is 8 U.S.C. § 1365b, which instructs the DHS Secretary to "establish an international registered traveler program that incorporates available technologies, such as biometrics and e-passports, and security threat assessments to expedite the screening and processing of international travelers, including United States Citizens and residents, who enter and exit the United States." 8 U.S.C. § 1365b(k)(3)(A). The Secretary was further instructed to "initiate a rulemaking to establish the program [and] criteria for participation," and ensure that the program "includes as many participants as practicable by . . . providing applicants with clear and consistent eligibility guidelines." 8 U.S.C. § 1365b(k)(3)(C), (E). The statute itself does not establish eligibility guidelines for any traveler program, nor does the statute reference denial or revocation of any such program.

Through agency regulations, the Secretary has outlined eligibility criteria for Port Passenger Accelerated Service Systems ("PORTPASS") programs. 8 C.F.R. § 235.7. PORTPASS programs were designed as "[a] system in which certain ports-of-entry (POEs) are identified and designated by the Service as providing access to the United States for a group of identified, low-risk, border crossers." 8 C.F.R. § 235.7(a)(1)(i). SENTRI is one of the PORTPASS programs established by DHS. 75 Fed. Reg. 82202, 82203 (Dec. 29, 2010).[2]

SENTRI "allows expedited entry at specified land border ports along the U.S.-Mexico border for pre-approved, low-risk travelers." *Id*.; *see also* 85 Fed. Reg. 55597, 55600 (Sept. 9, 2020). Membership in SENTRI is desirable due in part to the significantly

---

[2] SENTRI was initially developed by the legacy Immigration and Naturalization Service ("INS"). 85 Fed. Reg. 55597, 55598 (Sept. 9, 2020). The Homeland Security Act of 2002, Public Law 107–296, transferred the functions of the INS to the Department of Homeland Security. *Id*. at 55600 n.14.

shortened wait times at the border for pre-approved travelers. *See* 85 Fed. Reg. at 55600 ("PORTPASS was a series of programs designed to identify preregistered, low-risk travelers and permit them to enter the United States within predictable wait times . . . One of the main purposes of the PORTPASS programs was to ease commuter traffic at land ports of entry by providing dedicated commuter lanes (DCLs) to facilitate the rapid passage of low-risk, frequent travelers."); *see also* Doc. 10 at 29 ("The wait-time differential that Plaintiff has suffered (e.g. San Ysidro), can be as much as two to three hours and has even been as high as five or six hours.").

Certain eligibility requirements for participation in PORTPASS programs are contained in 8 C.F.R. § 235.7. "Criteria which will be considered in the decision to approve or deny the application include the following: admissibility to the United States and documentation so evidencing, criminal history and/or evidence of criminality, purpose of travel, employment, residency, prior immigration history, possession of current driver's license, vehicle insurance and registration, and vehicle inspection." 8 C.F.R. § 235.7(a)(4)(x). The district director having jurisdiction over the POE where the applicant requests access has discretion to deny a PORTPASS application. *Id*.

An individual's PORTPASS access may also be revoked "at the discretion of the district director or the chief patrol agent." *See* 8 C.F.R. § 235.7(b)("A PORTPASS program participant who violates any condition of the PORTPASS program, or who has violated any immigration law or regulation, or a law or regulation of the United States Customs Service or other Federal Inspection Service, or who is otherwise determined by an immigration officer to be inadmissible to the United States or ineligible to participate in PORTPASS, may have the PORTPASS access revoked at the discretion of the district director or the chief patrol agent."). While the law provides no process for appeal from the denial of a PORTPASS application, "denial is without prejudice to reapplying for this or any other Service benefit" after 90 days have passed following the application denial or revocation. 8 C.F.R. § 235.7(a)(4)(x). Finally, the statute provides that "[n]othing in this section is intended to create any right or benefit, substantive or procedural, enforceable in

law or equity by a party against the Department of Justice, the Immigration and Naturalization Service, their officers or any employees of the Department of Justice." 8 C.F.R. § 235.7(c).

While Plaintiff uses the terms SENTRI and Global Entry interchangeably throughout his Complaint and opposition to Defendants' motion to dismiss, SENTRI and Global Entry are distinct programs governed by separate regulations. Global Entry, like SENTRI, is a Trusted Traveler Program. 85 Fed. Reg. at 55597. Global Entry "allows preapproved travelers dedicated CBP processing at designated airports, currently through the use of automated kiosks." *Id*. Although SENTRI and Global Entry, along with another Trusted Traveler Program called NEXUS, "have developed many commonalities over recent years, the Global Entry, SENTRI, and NEXUS programs have retained their own fees, fee payment schedules, application processes, and rules regarding the payment of the application fee by minors." *Id*. at 55598. The Global Entry program has its own set of regulations, 8 C.F.R. § 235.12, which describe the factors which make an applicant disqualified for Global Entry, 8 C.F.R. § 235.12(b)(2), and provide a list of reasons why a Global Entry participant can be suspended or removed from the program. 8 C.F.R. § 235.12(j)(2). While DHS has proposed that a new regulation be established, which would model the SENTRI program regulations after the Global Entry regulations, the new regulation has yet to be finalized. *See* 85 Fed. Reg. at 55618, 55603.

## II.  LEGAL STANDARD

### A. Motion to Dismiss for Lack of Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction without general subject matter jurisdiction. *See Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). Federal Rule of Civil Procedure 12(b)(1) provides for dismissal of an action where the court lacks subject matter jurisdiction. *See* FED. R. CIV. P. 12(b)(1). Plaintiff bears the burden of establishing subject matter jurisdiction. *See McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

"A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (citing *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000)). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id*. "If the defendant brings a facial attack, a district court must assume that the factual allegations in the complaint are true and construe them in the light most favorable to the plaintiff." *Li v. Chertoff*, 482 F. Supp. 2d 1172, 1175 (S.D. Cal. 2007) (citing *United States v. One 1997 Mercedes E420*, 175 F.3d 1129, 1130–31 & n.1 (9th Cir. 1999) and *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003)). If the defendant brings a factual attack, however, the Court need not presume the truthfulness of plaintiff's allegations. *Id*. In such a case, the district court "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Safe Air*, 373 F.3d at 1039.

**B. Administrative Procedure Act**

"The APA 'sets forth the procedures by which federal agencies are accountable to the public and their actions subject to review by the courts.'" *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 140 S. Ct. 1891, 1905 (2020) (quoting *Franklin v. Massachusetts*, 505 U.S. 788, 796 (1992)); *see also* 5 U.S.C. § 706. The APA "requires agencies to engage in 'reasoned decisionmaking.'" *Id*. (quoting *Michigan v. EPA*, 576 U.S. 743, 750 (2015)). Agency actions may be set aside by a reviewing court if the action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Under this "narrow standard of review, . . . a court is not to substitute its judgment for that of the agency." *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 513 (2009) (internal quotation marks omitted). Instead, the reviewing court should "assess only whether the decision was 'based on a consideration of the relevant factors and whether there has been a clear error of judgment.'" *Dep't of Homeland Sec. v. Regents*, 140 S. Ct.

at 1905 (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971)).

The APA establishes a "basic presumption of judicial review [for] one 'suffering legal wrong because of agency action.'" *Abbott Labs. v. Gardner*, 387 U.S. 136, 140 (1967) (quoting 5 U.S.C. § 702). "That presumption can be rebutted by a showing that the relevant statute 'preclude[s]' review, § 701(a)(1), or that the 'agency action is committed to agency discretion by law,' § 701(a)(2)." *Dep't of Homeland Sec. v. Regents*, 140 S. Ct. at 1905. The latter exception is at issue here, as Defendants argue "the underlying SENTRI regulation commits the agency's decision to revoke Mr. Jajati's SENTRI membership to the sound discretion of the agency and there exists no meaningful standard against which this Court may judge the agency's exercise of discretion." (Doc. 7 at 8.)

The Supreme Court has "read the exception in § 701(a)(2) quite narrowly, restricting it to 'those rare circumstances where the relevant statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion.'" *Weyerhaeuser Co. v. United States Fish and Wildlife Serv.*, 139 S. Ct. 361, 370 (2018) (quoting *Lincoln v. Vigil*, 508 U.S. 182, 191 (1993)); *see also Heckler v. Chaney*, 470 U.S. 821, 830 (1985) ("[I]f no judicially manageable standards are available for judging how and when an agency should exercise its discretion, then it is impossible to evaluate agency action for 'abuse of discretion.'"). The Section 701(a)(2) exception has been applied in "few cases" which "involved agency decisions that courts have traditionally regarded as unreviewable, such as the allocation of funds from a lump-sum appropriation, *Lincoln*, 508 U.S., at 191, 113 S. Ct. 2024 or a decision not to reconsider a final action, *ICC v. Locomotive Engineers*, 482 U.S. 270, 282, 107 S. Ct. 2360, 96 L.Ed.2d 222 (1987)." *Weyerhaeuser*, 139 S. Ct. at 370.

### III.  DISCUSSION

Defendants, relying on 5 U.S.C. § 701(a)(2), argue the motion to dismiss for lack of jurisdiction should be granted because "the underlying SENTRI regulation commits the agency's decision to revoke Mr. Jajati's SENTRI membership to the sound discretion of

the agency and there exists no meaningful standard against which this Court may judge the agency's exercise of discretion." (Doc. 7 at 8.) They argue "the authorizing statute for SENTRI, 8 U.S.C. § 1365b(k)(3)(A), itself contains no guidance regarding who is eligible to participate in any program" and that the regulations promulgated under 8 U.S.C. § 1365b(k)(3)(A) provide only "general guidance" regarding eligibility to participate in SENTRI. (*Id.* at 9.) Plaintiff argues the Court does have jurisdiction under the APA to review CBP's decision to revoke Plaintiff's SENTRI membership, as well as CBP's "refusal to provide a reason for the denial action." (Doc. 8 at 7.) Having reviewed the parties' arguments and the relevant law, the Court finds it is precluded from reviewing the agency's decision to revoke Plaintiff's SENTRI membership under the APA, because revocation of an individual's right to participate in the program is committed solely to the agency's discretion.

While the Court begins with the "basic presumption of judicial review" established by the APA, "[t]hat presumption can be rebutted by a showing that . . . the 'agency action is committed to agency discretion by law.'" *Dep't of Homeland Sec. v. Regents*, 140 S. Ct. at 1905 (quoting 5 U.S.C. § 701(a)(2)). The Court reads the § 701(a)(2) exception "quite narrowly," but nevertheless finds the agency's decision to revoke Plaintiff's SENTRI membership is one of "those rare 'administrative decision[s] traditionally left to agency discretion.'" *Id.* (quoting *Lincoln*, 508 U.S. at 191).

"[Section] 701(a)(2) requires careful examination of the statute on which the claim of agency illegality is based." *Webster v. Doe*, 486 U.S. 592, 600 (1988). The authorizing statute, 8 U.S.C. § 1365b(k), provides only a general mandate that DHS "establish an international registered traveler program" and "initiate a rulemaking to establish the program" as well as the "criteria for participation." 8 U.S.C. § 1365b(k)(3)(A), (C). Aside from providing that the Secretary "ensure that the international registered traveler program includes as many participants as practicable by . . . providing applicants with clear and consistent eligibility guidelines," the statute is silent regarding the criteria to apply in denying or revoking an individual's membership in SENTRI. 8 U.S.C. § 1365b(k)(3)(E).

9

Additionally, the regulation governing SENTRI provides that "[a]n application may be denied *in the discretion of* the district director having jurisdiction over the POE where the applicant requests access." 8 C.F.R. § 235.7(a)(4)(x) (emphasis added). While the regulation provides a list of "[c]riteria which will be *considered* in the decision to approve or deny the application," including "admissibility to the United States and documentation so evidencing, criminal history and/or evidence of criminality, purpose of travel, employment, residency, prior immigration history, possession of current driver's license, vehicle insurance and registration, and vehicle inspection," the regulation is silent regarding how the agency weighs these factors or whether any factor is dispositive in evaluating a SENTRI membership application. *Id*. (emphasis added). The decision to revoke one's membership in SENTRI is committed to the sole discretion of the district director or chief patrol agent, and such membership can be revoked if the individual is "otherwise determined by an immigration officer to be inadmissible to the United States or ineligible to participate in PORTPASS." 8 C.F.R. § 235.7(b). The regulation does not further define when an individual is "otherwise . . . ineligible to participate in PORTPASS." Given the wording of the statute and regulations governing SENTRI, there exists "no judicially manageable standards . . . for judging how and when an agency should exercise its discretion" in deciding whether to revoke SENTRI membership. *Heckler*, 470 U.S. at 830.

In support of their motion to dismiss, Defendants cite *Woodward v. United States Customs & Border Prot.*, No. CV-20-00151-TUC-DCB, 2022 WL 294214 (D. Ariz. Feb. 1, 2022). In *Woodward*, the plaintiff alleged CBP arbitrarily and capriciously revoked his SENTRI membership following an altercation between Plaintiff and a CBP officer at the United States-Mexico border. *Id*. at *1. Plaintiff objected both to the revocation of his SENTRI pass, as well as the allegedly insufficient explanation given by CBP for the revocation. *Id*. District Judge David C. Bury, in ruling on the parties' cross motions for summary judgment, held that "[t]he decision to revoke the Plaintiff's eligibility for the PORTPASS access program is simply not the type of final agency action subject to review

under the APA." *Id*. at *5. The Court based its holding on a review of the language of 8 U.S.C. § 1365b(k) and 8 C.F.R. § 235.7, as well as its finding that "the regulations clearly establish . . . that in determining eligibility, including revoking it, the matter is solely up to the discretion" of the agency. *Id*. at *4. While not binding precedent, the Court agrees with the holding in *Woodward* and reaches a similar result here.

    Plaintiff cites a myriad of cases in his opposition to Defendants' motion to dismiss which the Court finds either inapposite or distinguishable. The orders in *Omar v. Kerry*, No. 15-CV-01760-JSC, 2015 WL 5964901 (N.D. Cal. Oct. 13, 2015) and *Omar v. Kerry*, No. 15-CV-01760-JSC, 2016 WL 617449 (N.D. Cal. Feb. 16, 2016), were—as Plaintiff admits (*see* Doc. 8 at 7)—subsequently vacated, *Omar v. Pompeo*, No. 3:15-CV-01760-JSC, 2018 WL 4191416 (N.D. Cal. Aug. 16, 2018), and in any event involved the revocation of a passport, which is not at issue here.[3] The plaintiff in *Lizarraga v. Maggi*, No. 10CV2299 DMS RBB, 2011 WL 2636851 (S.D. Cal. July 6, 2011) did not file a claim under the APA; instead, the plaintiff in that case filed claims for Fifth Amendment due process, *Bivens*, and Federal Tort Claims Act violations in connection with the revocation of his electronic filer code. *Id*. at *2. The agency action at issue in *New York v. Wolf*, No. 20-CV-1127 (JMF), 2020 WL 6047817, at *6 (S.D.N.Y. Oct. 13, 2020), another case on which Plaintiff relies, is distinguishable. There, the state of New York and a certified class of New Yorkers challenged DHS's decision to suspend the eligibility of *all* New York residents to enroll or re-enroll in Trusted Traveler Programs. *Id*. at *1–2. Plaintiffs moved for summary judgment on their APA claims, but before Defendants' opposition to the motion was due, DHS announced it was lifting the ban on New Yorkers wishing to apply for Trusted Traveler Programs, and Defendants informed the Court the DHS ban on New Yorkers was "not legally supportable." *Id*. at *4. In other words, while the Court found it

---

[3] Indeed, Plaintiff is still able to cross the United States-Mexico border despite the revocation of his SENTRI membership. The effect of the revocation of Plaintiff's membership in SENTRI is that Plaintiff cannot use the dedicated SENTRI lane, not that he is prohibited from traveling internationally.

11

3:22-cv-00175-RBM-AGS

had jurisdiction over the dispute, its ruling was limited to the state-wide ban on New Yorkers applying for any Trusted Traveler Programs, as opposed to any DHS decision over an individual's SENTRI application.

Two of the cases Plaintiff cites are more persuasive, but the Court finds both distinguishable on the grounds that the court's holding was premised on a review of the Global Entry program regulation, not the regulation governing SENTRI. In *Boylan v. Morgan et al.*, Case No. 20-cv-01967-WQH-AHG (S.D. Cal. July 22, 2021), while the court found it had jurisdiction under the APA to review CBP's decision to deny the plaintiff's SENTRI application, it did so by relying on the text of 8 C.F.R. § 235.12—the regulation governing the Global Entry program—rather than 8 C.F.R. § 235.7, which covers membership in SENTRI.[4] Similarly, while the court in *McLean v. Morgan*, No. 20-2145-JWB, 2020 WL 5094683, at *6 (D. Kan. Aug. 28, 2020) found it had jurisdiction over the plaintiff's APA claims following the denial of his Global Entry application, the court in that case relied on the Global Entry regulations present in 8 C.F.R. § 235.12—a regulation that is not at issue here.[5] While Global Entry and SENTRI maintain similarities, the two are distinct programs, governed by separate regulations containing unique eligibility requirements.

Accordingly, the Court finds that it lacks jurisdiction under the APA to review Defendants' decision to revoke Plaintiff's SENTRI membership.

///
///
///
///

---

[4] The court noted that "[a]ll parties appl[ied] the regulations for the Global Entry program in 8 C.F.R. § 235.12 to the denial of Plaintiff's application for the SENTRI program" in their briefing on the motion to dismiss. *Boylan v. Morgan et al.*, Case No. 20-cv-01967-WQH-AHG, Doc. 34 at 13 n.2 (S.D. Cal. July 22, 2021).

[5] In any event, the holding in *McLean v. Morgan*, No. 20-2145-JWB, 2020 WL 5094683 (D. Kan. Aug. 28, 2020) is not binding on this Court.

## IV.  CONCLUSION

For the reasons discussed above, Defendants' motion to dismiss for lack of subject matter jurisdiction (Doc. 7) is **GRANTED**.  Accordingly, Plaintiff's motion for preliminary injunction (Doc. 10) is **DENIED AS MOOT**.  The Clerk of Court is directed to close the case.

**IT IS SO ORDERED**.

DATE:  October 14, 2022

_____
HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE